RECORD NO. 14-4608

In The

# United States Court of Appeals
### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## ZACHARY NATHANIEL GRAVES,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

―――――――――

## BRIEF OF APPELLANT

―――――――――

M. Gordon Widenhouse, Jr.
RUDOLF, WIDENHOUSE & FIALKO
312 West Franklin Street
Chapel Hill, North Carolina  27516
(919) 967-4900

Keith A. Williams
LAW OFFICES OF KEITH A. WILLIAMS, P.A.
321 South Evans Street, Suite 103
Greenville, North Carolina  27835
(252) 931-9362

*Counsel for Appellant*

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF JURISDICTION .................................................... 1

ISSUE PRESENTED FOR REVIEW ................................................ 2

STATEMENT OF THE CASE ........................................................... 3

      A.     Charges in indictment and guilty plea ........................................ 3

      B.     Zachary Graves' background and medical condition ................ 4

      C.     Summary of evidence from presentence report ........................ 6

      D.     Sentencing determination ......................................................... 10

SUMMARY OF THE ARGUMENT ................................................... 12

ARGUMENT ...................................................................................... 14

I.     THE DISTRICT COURT IMPOSED AN UNREASONABLE SENTENCE ON ZACHARY GRAVES THAT WAS GREATER THAN NECESSARY BY FOCUSING PRIMARILY ON THE OFFENSE CONDUCT AND BY FAILING TO GIVE DUE CONSIDERATION TO RELEVANT STATUTORY SENTENCING FACTORS AND THE REQUEST FOR A DOWNWARD VARIANCE BASED ON HIS SERIOUS MEDICAL CONDITION .................................... 14

      Standard of Review ........................................................................ 14

      Discussion ...................................................................................... 14

CONCLUSION ................................................................................... 23

i

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Gall v. United States*,
    552 U.S. 38 (2007)..................................................................14, 17, 18, 20

*United States v. Amezcua-Vasquez*,
    567 F.3d 1050 (9th Cir. 2009) ..............................................................16, 22

*United States v. Booker*,
    543 U.S. 200 (2005)......................................................................................16

*United States v. Carter*,
    564 F.3d 325 (4th Cir. 2009) ...............................................................*passim*

*United States v. Cobler*,
    748 F.3d 570 (4th Cir. 2014) .......................................................................14

*United States v. Curry*,
    523 F.3d 436 (4th Cir. 2008) .......................................................................14

*United States v. Green*,
    436 F.3d 449 (4th Cir.), *cert. denied*,
    126 S. Ct. 2309 (2006).................................................................... 17, 21-22

*United States v. Hampton*,
    441 F.3d 284 (4th Cir. 2006) ...........................................................14, 16, 21

*United States v. Heath*,
    559 F.3d 263 (4th Cir. 2009) .......................................................................16

*United States v. Lambert*,
    984 F.2d 658 (5th Cir. 1993) .......................................................................21

*United States v. Lynn*,
    592 F.3d 572 (4th Cir. 2010) ...........................................................16, 17, 22

*United States v. Mendoza-Mendoza,*
    597 F.3d 212 (4th Cir. 2010) ...........................................................20

*United States v. Perez-Pena,*
    453 F.3d 236 (4th Cir. 2006) ...............................................16, 17, 21

*United States v. Rusher,*
    966 F.2d 868 (4th Cir. 1992) ...........................................................21

*United States v. Stephens,*
    549 F.3d 459 (6th Cir. 2008) ...........................................................16

*United States v. Thompson,*
    595 F.3d 544 (4th Cir. 2010) ...........................................................20

*United States v. Webb,*
    403 F.3d 373 (6th Cir. 2005) ...........................................................16

**STATUTES**

18 U.S.C. § 924(c) ...............................................................................1, 15

18 U.S.C. § 924(c)(1)(A)(ii) ....................................................................3

18 U.S.C. § 1951 ...................................................................................1, 3

18 U.S.C. § 3553 ................................................................................18, 21

18 U.S.C. § 3553(a) ........................................................................*passim*

18 U.S.C. § 3553(c) ...............................................................................14

18 U.S.C. § 3742 .....................................................................................1

28 U.S.C. § 1291 .....................................................................................1

**RULE**

Fed. R. Crim. P. 11.................................................................................4

iv

## GUIDELINES

U.S.S.G. § 3B1.4......................................................................................4, 10, 12, 18

U.S.S.G. § 2B3.1(b)(2)(c)........................................................................3, 10, 12, 18

U.S.S.G. § 2B3.1(b)(4)(A).......................................................................3, 10, 12, 18

U.S.S.G. § 2B3.1(b)(6) ....................................................................................3, 10

U.S.S.G. § 2B3.1(b)(7)(B) ...............................................................................3, 10

U.S.S.G. § 3B3.1(c) ................................................................................4, 10, 12, 18

U.S.S.G. § 3D1.4....................................................................................................4

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this matter pursuant to 18 U.S.C. § 1951 and 18 U.S.C. § 924(c). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291; 18 U.S.C. § 3742. Zachary Graves timely gave notice of appeal on 5 August 2014 from a judgment entered on 28 July 2014. This appeal is from a final order.

## ISSUE PRESENTED FOR REVIEW

The district court imposed an unreasonable sentence on Zachary Graves because it was greater than necessary to achieve the purpose of individual punishment, where the district court relied almost exclusively on the offense conduct, which was accounted for by fifteen levels of penalty enhancements, and failed to give due consideration to statutory sentencing factors and Mr. Graves' compelling health issues.

## STATEMENT OF THE CASE

### A.    Charges in indictment and guilty plea

Zachary Graves was indicted on multiple counts of interference with commerce by threat of violence (robberies) and use of a firearm during a crime of violence.    Counts One, Two, Four, Six, and Seven charged that he knowingly and unlawfully conspired with others to obstruct, delay and affect commerce by robbery in violation of 18 U.S.C. § 1951. [JA 12-17]    Counts Three, Five, and Eight charged that, during a crime of violence, he knowingly and unlawfully used, carried, possessed, and brandished a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  [JA13-16]

Mr. Graves pled guilty to Counts One, Four, Five, and Six pursuant to a written plea agreement.    [JA 28-35]    Counts One, Four, and Six carried a maximum penalty of twenty years imprisonment.  Court Five required a minimum term of seven years that would run consecutively to any sentence imposed on the other counts.  [JA 28-29]  The parties agreed the following enhancements would apply:  a five-level enhancement for brandishing a firearm, U.S.S.G. § 2B3.1(b)(2)(c);  a four-level enhancement for abducting a person, U.S.S.G. § 2B3.1(b)(4)(A);  a one-level enhancement for taking a controlled substance, U.S.S.G. § 2B3.1(b)(6);  a one-level enhancement for a loss amount between $10,000.00 and $50,000.00, U.S.S.G. § 2B3.1(b)(7)(B);  a two-level enhancement

for being a leader or organizer, U.S.S.G. § 3B3.1(c); and a two-level enhancement for using a minor to commit a crime, U.S.S.G. § 3B1.4.  The parties also agreed a two-level grouping enhancement would be appropriate under U.S.S.G. § 3D1.4. [JA 29-30]  The district court conducted a proceeding pursuant to Fed. R. Cr. P. 11 and accepted the guilty plea.  [JA 38-47, 51-55]

### B.    Zachary Graves' background and medical condition

Mr. Graves grew up in a good home.  He had many friends and was well-liked by the adults who knew him.  [JA 142]  He was often in the homes of other people who trusted him with their children and their possessions.  These people described him as "a beacon of what other young men should hope to become" and a "respectful" and "honest" person.  [JA 70-84, 162-71]  Many people not only wrote letters to the sentencing court on his behalf, but also came to the sentencing hearing and spoke eloquently for him.  [JA 70-80, 162-75]

From 2009 to 2012, Mr. Graves served his country by enlisting in the United States Army.  He completed more than two years of active service and rose to the rank of Specialist.  Mr. Graves was honorably discharged due to his medical conditions on 15 June 2012.  During his time in the Army, Mr. Graves was awarded the National Defense Service Medal, the Global War on Terrorism Service Medal, the Korean Defense Service Metal, and an Army Service Ribbon.

4

Unfortunately, Mr. Graves began to suffer from and was diagnosed with chronic migraines, shoulder deterioration and degenerative arthritis in September 2010. Eventually, these serious medical infirmities led to his retirement and Honorable Discharge from the Army. [JA 142] His medical records showed Mr. Graves would be crippled by 13 to 20 migraine headaches per month. Each headache lasted four to five hours. Doctors prescribed medication for all these conditions. But none were effective. [JA 142-43, 190-331]

While experiencing these physical ailments, Mr. Graves began to have fits of insomnia. Military physicians evaluated him and diagnosed him with insomnia, anxiety, and depression. Doctors attributed these new mental health issues to Mr. Graves' inability to find a way to relieve the pain from his migraines. They prescribed Cymbalta, Ambien, and Buspar. [JA 143] Nothing worked.

Mr. Graves began smoking marijuana when he was 23 years old. He continued to smoke marijuana until his arrest. The marijuana helped with his migraines. He tried cocaine once in his lifetime. [JA 143] He also began taking Percocet and Hydrocodone that had not been prescribed for him, taking about three pills a day. But his use of the pills was not consistent. [JA 143]

During his pre-sentence incarceration, Mr. Graves felt "older than he should." His migraines continued to be debilitating. He was also in pain from his arthritis and shoulder issues. The frequency and severity of his headaches

increased, which contributed to his physical and mental deterioration. He was prescribed Norco for his pain. Since his diagnosis, physicians have yet to find a combination of medications that help relieve the pain Mr. Graves experiences. [JA 143, 190-331]

### C.    Summary of evidence from presentence report

On 23 March 2013, two people wearing ski masks robbed a convenience store. One of the suspects pointed a gun at the cashier and told her to put money in his backpack. The suspects left on motorcycles with $210.00. [JA 131-32]

On 26 March 2013, a person wearing a ski mask robbed a different convenience store. The suspect pointed a gun at the cashier and told her to give him money from the cash register. She gave him $50.00. He left on a motorcycle. [JA 132]

On 29 March 2013, Zachary Graves, Walter Pries, Richard Fiske, and O.M. a juvenile, robbed a CVS Pharmacy. Mr. Graves and O.M. had been involved in two earlier robberies. They planned the CVS robbery and recruited Pries and Fiske to act as lookouts. Mr. Graves outlined the plan to rob the CVS to Pries and Fiske at his apartment. [JA 132]

Mr. Graves' girlfriend, Ashley Paschal, and Fiske's girlfriend went to an IHOP restaurant on March 29. While the girls were at the IHOP, Mr. Graves and O.M. rode by the area on their motorcycles and fired gunshots. They wanted to

6

create a distraction so the police would come to that area and away from the CVS. But Paschal did not hear the gunshots and did not call the police. [JA 132] After Mr. Graves and O.M. fired the shots, they went to the CVS. Pries and Fiske had separately gone to the CVS in Pries' car. Fiske went into the woods across from the CVS, while Pries drove to a nearby area. Pries, Fiske, and Mr. Graves had walkie talkies so they could communicate with each other. [JA 132]

Shortly thereafter, Mr. Graves and O.M. came to the area and asked Fiske and Pries about the situation. Upon learning no police officers were around, Mr. Graves and O.M. went into the CVS. They wore ski masks and carried handguns. Mr. Graves told the people in the store to get on the floor. He told the pharmacist to put pills in their backpacks, while O.M. took the cell phones, tossed them to the side, and pointed his gun at them. After the pharmacist had put the pills in the backpacks, Mr. Graves and O.M. ordered the people not to move. Mr. Graves and O.M. left on their motorcycles and went to Mr. Graves' apartment. Pries picked up Fiske and also went to Mr. Graves' apartment. Mr. Graves and O.M. were smoking marijuana, while Paschal was sitting on the floor and organizing the pills. Mr. Graves and O.M. divided the pills they took from the CVS. Fiske was paid $500.00 and Pries was paid $250.00 for their parts in this robbery. [JA 133]

After reviewing a videotape of the robbery, investigators determined one of the participants had military or law enforcement training and saw both participants

7

wore motorcycle-style gloves. Using videotapes from traffic cameras, investigators identified the motorcycles and followed their path, which took them to an apartment complex. At the complex, they found the motorcycles belonging to Mr. Graves. He matched the description of one of the suspects in the robberies and also had a permit to carry a concealed weapon. He had also been released from the military, which was consistent with the suspicion that one of the robbers had military or law enforcement training. [JA 133]

Officers asked Mr. Graves if he would speak with them. He agreed. When asked if he had any weapon on him, he lifted his shirt, revealing a firearm in a holster and another in back of his waistband. The weapons appeared to be the same type as the ones used in the robberies. Mr. Graves said one of the motorcycles belonged to him and he was test driving the other motorcycle because he was thinking about buying it. Both motorcycles were like the ones used in the robberies. When the officers said they wanted to ask him about some robberies, he became even more nervous. [JA 133] The officers also asked if they could search a black BMW in the garage, which Mr. Graves allowed. In it, the officers found two more pistols, a shoulder holster, and a large amount of cash in the glove box. The money was consistent with proceeds from level illegal narcotics sales. [JA 133-34] The officers detained Mr. Graves, as well as Fiske, and Pries, as they were suspects in the robberies. When the officers handcuffed the three men, Fiske

and Pries began to shake and cry uncontrollably. The officers took the two guns from Mr. Graves. [JA 134]

The officers learned Paschal was in Mr. Graves' apartment and feared she might be apartment destroying evidence. They went to the apartment and Paschal opened the door. There were several large pipes for smoking marijuana, a gun on a table, a strong odor of marijuana. [JA 134-35] Police also found several bottles of prescription medication, a shotgun and pistol, black and white motorcycle gloves, and a tan and a black jacket that matched the jackets worn by the suspects in the CVS robbery. [JA 135] An examination of Mr. Graves' phone showed text messages to O.M. indicating he should not come to the apartment because the police were there. [JA 135] There were also test messages with details about the robberies and indicating both Mr. Graves and O.M. were involved in the robberies. [JA 135]

Fiske admitted he had been friends with Fiske for over seven years and with Mr. Graves since 2010. O.M. talked to Fiske and Pries about making some quick money and eventually asked if they would acts as lookouts for the CVS robbery. Pries and Fiske both agreed. [JA 135] Mr. Graves bought four walkie talkies and a black ski mask to use in the CVS robbery. [JA 135]

### D.    Sentencing determination

The presence report recommended a guideline range of 168 to 210 months on the robbery counts based on a guideline calculations that including adjustments for brandishing a firearm, abducting a person, taking a controlled substance, a loss amount between $10,000.00 and $50,000.00, being a leader or organizer, and using a minor to commit a crime.  *See* U.S.S.G. §§ 2B3.1(b)(2)(c), 2B3.1(b)(4)(A),   2B3.1(b)(6), 2B3.1(b)(7)(B), 3B3.1(c), 3B1.4.   [JA 144]   It projected a Total Offense Level 35 and Criminal History Category I.  [JA 144]

At  sentencing,  the  district  court  considered  and  accepted  the recommendations in the presentence report.   [JA 61]   It departed below the advisory guideline range based on Mr. Graves' request for a downward variance, but substantially less of a variance than requested by the defense.  [JA 96-97, 110-11]  The district court imposed a sentence of 120 months for the robbery charges and a consecutive sentence of 84 months fo the use of a firearm charge, resulting in a total sentence of imprisonment of 204 months.[1]  The district court also imposed a three-year  term  of  supervised  release,  a  special  assessment  of  $400.00,  and restitution of $16,539.15. [JA 110, 117-21]   The district court did so primarily

---

[1]Richard Benjamin Fiske and Walter Daniel Pries were each sentenced to only thirty-eight months in prison.  O.M. was not prosecuted in federal court.  He was prosecuted and sentenced in the state court.

based on what it considered the seriousness of the offense. [JA 107-10] Mr.

Graves timely appealed from this final judgment. [JA 124-25]

## SUMMARY OF THE ARGUMENT

A district court must impose a sentence sufficient but not greater than necessary under the circumstances. Here, the district court imposed a sentence of 204 months. While the district court noted its reasons, it placed undue emphasis on the seriousness of the conduct, by which people in the stores were put at risk, in fashioning a sentence of 120 months for the robbery convictions.

But this consideration was already factored into the advisory guideline range for those convictions through multiple enhancements to which the defense stipulated, including adjustments for brandishing a firearm, abducting a person, being a leader or organizer, and having a minor participate in the crimes. *See* U.S.S.G. §§ 2B3.1(b)(2)(c), 2B3.1(b)(4)(A), 3B3.1(c), 3B1.4. [JA 144] In addition, the defendant was subjected to an additional sentence of 84 months for the use of a firearm during the robberies, a sentence that was required to run consecutively to the sentence for the robberies. For the district court to then use these considerations as the primary, if not the sole basis for the sentence imposed is substantively unreasonable.

Furthermore, the district court gave insufficient consideration to the defense counsel's request for a downward variance of ten levels based on Mr. Graves' military service; his documented, debilitating medical condition; the substantially shorter sentences of his co-defendants; his ability to serve as substantial portion of

the sentence in home confinement for which he could compensate the government for its costs; and his good character and reputation before these crimes.  In short, the district court fashioned a sentence greater than necessary under the circumstances that hinged primarily on its assessment of the offense conduct. Because the sentence was substantively unreasonable, the judgment must be vacated.

## ARGUMENT

I. **THE DISTRICT COURT IMPOSED AN UNREASONABLE SENTENCE ON ZACHARY GRAVES THAT WAS GREATER THAN NECESSARY BY FOCUSING PRIMARILY ON THE OFFENSE CONDUCT AND BY FAILING TO GIVE DUE CONSIDERATION TO RELEVANT STATUTORY SENTENCING FACTORS AND THE REQUEST FOR A DOWNWARD VARIANCE BASED ON HIS SERIOUS MEDICAL CONDITION.**

**Standard of Review:** This Court reviews a sentence within the advisory guideline range for reasonableness, applying an abuse of discretion standard. *United States v. Curry*, 523 F.3d 436, 439 (4th Cir. 2008). In reviewing the reasonableness of the sentence imposed, legal questions are reviewed de novo and factual determinations are reviewed for clear error. *United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006).

**Discussion**: The polar star for sentencing is to impose punishment sufficient but no greater than necessary under the circumstances. *See* 18 U.S.C. § 3553(a). "A sentence that falls within a properly calculated guideline range is presumptively reasonable." *United States v. Cobler*, 748 F.3d 570, 582 (4th Cir. 2014). Even where the district court imposes a sentence within the advisory guideline range, it "must 'state in open court' the particular reasons supporting its chosen sentence. 18 U.S.C. § 3553(c) (2006)." *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009); *accord Gall v. United States*, 552 U.S. 38 (2007). Here, the district court imposed a sentence of 204 months,120 months of which were for the robberies

14

(where the advisory guideline range was 168 to 210 months) followed by another 84 months for the use of a firearm charge, which was required by statute to be imposed consecutively.  *See* 18 U.S.C. § 924(c).  [JA 110, 118]

Although the district court granted a downward variance from the advisory guideline range of 168 to 210 months on the robberies, it did not vary to the extent requested by defense counsel, who asked the court to move down the sentencing grid by ten levels to a range of 57 to 71 months.[2]  [JA 97]  When the district court discussed its reasoning that included many of the factors under section 3553(a), it placed undue emphasis on the nature of the crime, particularly the possession and brandishing of firearms by the participants in the store, the multiple robberies, the preplanning, and "scaring the hell out of various clerks."  [JA 109]  These considerations were part of the offense conduct and the basis for several of the enhancements under the guidelines.  In doing so, the district court fashioned a sentence greater than necessary under the circumstances that hinged primarily on its assessment of the offense conduct.

A federal sentence is erroneous when a district court fails to consider the factors under section 3553(a) and to apply them specifically to the defendant being

---

[2]Given an Offense Level 35 and Criminal History Category I, a downward variance of ten levels to Offense Level 35 and Criminal History Category I would have resulted in an Advisory Guideline Range of 57 to 71 months for the robberies. The district court would still have been required to impose a consecutive sentence for using a firearm in a crime of violence, which would have added another 84 months to the term of imprisonment.

15

sentenced. *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010); *Carter*, 564 F.3d at 329 (citing *United States v. Stephens*, 549 F.3d 459, 466-47 (6th Cir. 2008) (vacating sentence within guideline range). Under *Lynn* and *Carter*, more extensive justification was needed than the district court provided. *See United States v. Hampton*, 441 F.3d 284, 288 (4th Cir. 2006). Where the district court's statements from which the reasonableness of a sentence are "divined," there must be more from which its substantive reasonableness springs. Otherwise, "there is no such thing as substantive reasonableness." *United States v. Heath*, 559 F.3d 263, 268 (4th Cir. 2009) (Gregory, J., dissenting).

The district court apparently based its extremely long sentence on the nature of the offense. As such, it is substantively unreasonable. *See United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009) (sentence substantively unreasonable where 16-level enhancement substantially overstated need for sentence to reflect seriousness of offense, promote respect for law, and provide just punishment); *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005) (sentence substantively unreasonable if district court gives unreasonable weight to any factor under section 3553(a)).

Under an advisory guideline scheme, the district court was required to impose a sentence that was reasonable under the circumstances. *United States v. Booker*, 543 U.S. 200, 261 (2005); *United States v. Perez-Pena*, 453 F.3d 236,

16

240-41 (4th Cir. 2006). In addition to the guidelines, the district court was supposed to consider the nature and circumstances of the offense along with the history and characteristics of Mr. Graves. *Perez-Pena*, 453 F.3d at 241. The sentence must "fulfill the congressionally established objectives for sentencing: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; [and] providing restitution to victims." *United States v. Green*, 436 F.3d 449, 455 (4th Cir.), *cert. denied*, 126 S. Ct. 2309 (2006). "Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record as 'individualized assessment' based on the particular facts of the case before it." *Carter*, 564 F.3d at 330 (quoting *Gall*, 552 U.S. at 50); *accord Lynn*, 592 F.3d at 584-85.

Section 3553(a) lists numerous factors a district court "shall consider . . . in determining the particular sentence to be imposed." These include the nature and circumstances of the crime, the defendant's characteristics, and fashioning a sentence reflecting the seriousness of the crime, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence, protecting the public from further criminal activity of the defendant, providing the defendant training, education, medical care, and reflecting the kinds of sentences

available.   Even a sentencing within the advisory guideline range   must be evaluated under the appropriate 3553(a) factors.  *Gall*, 522 U.S. at 46-47.

Undoubtedly, the district court felt some frustration with a crime that involved the brandishing of guns by several people, the participation of multiple perpetrators, the involvement of a minor, and the use of quasi-military or law enforcement tactics.[3]   [JA 107- 10]   But the guideline range had already been elevated ten levels based on enhancements for most of these aspects of the crimes, including adjustments for brandishing a firearm, abducting a person, Mr. Graves being a leader or organizer, and a minor participating in the crimes.  *See* U.S.S.G. §§ 2B3.1(b)(2)(c), 2B3.1(b)(4)(A), 3B3.1(c), 3B1.4.  [JA 144]  To then tacitly use these considerations as the primary, if not the sole basis for the sentence imposed is substantively unreasonable.  Mr. Graves's position regarding the crimes should not have been the driving force in the sentence imposed under section 3553, especially where the district court failed adequately to consider the request for a downward

---

[3]This frustration manifested itself when the district court described the offense as "serious" and referred to the conduct as "scaring the hell out of various clerks."  [JA 109]

variance and where two other people were intricately involved in the conduct but given far shorter sentences.[4]

The request for a downward variance of ten levels for the robbery convictions, to a guideline range of 57 to 71 months, as opposed to the range of 168 to 210 months that was established at sentencing, was not fanciful. Mr. Graves had a very positive character and behavior growing up. He was well-liked and trusted by the adults who knew him. [JA 142] They described him as "a beacon of what other young men should hope to become" and a "respectful" and "honest" person. [JA 70-84, 162-71] He served in the Army with distinction and was awarded numerous medals and honors. But he began to suffer from and was diagnosed with chronic migraines, shoulder deterioration and degenerative arthritis as well as acute migraine headaches. The medical treatment was ineffective. [JA 142-43, 190-331] During his pre-sentence incarceration, the migraines continued to be debilitating and the frequency and severity of his headaches increased. Contrary to the district court's statement, Mr. Graves' conduct in these robberies was an aberration.

---

[4]Both Fiske and Pries were sentenced to only thirty-eight months. This disparity is quite significant, as they were active participants in the planning and execution of the crimes. Section 3553(a) expressly requires the district court to consider the disparity among co-defendants in sentencing. The district court failed to give adequate consideration to this unwarranted disparity in this case, resulting in a sentence that was substantively unreasonable.

19

This Court recently acknowledged "that the law as it relates to federal sentencing is in a state of flux, and [we], like out sister circuits, [are] still in the process of implementing many of the Supreme Court's recent pronouncement." *United States v. Thompson*, 595 F.3d 544, 548 (4th Cir. 2010). At a minimum, however, the district court is obliged to provide some basis for appellate review so this Court can determine if it gave adequate consideration to the non-frivolous reasons advanced by a defendant at sentencing. *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216-18 (4th Cir. 2010). Moreover, it is unreasonable to impose the maximum sentence available based solely on the nature of the offense. This unreasonableness occurred here.

The district court did not make an individualized assessment based on the facts presented. That is, it did not appropriately apply the relevant section 3553(a) factors to the specific circumstances of the case before it." *Carter*, 564 F.3d at 328 (quoting *Gall*, 552 U.S. at 50). Although the district court "need not 'robotically tick through § 3553(a)'s every subsection, . . . a talismantic recitation of the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decisionmaking or provide an adequate basis for appellate review." *Id*. at 329. A sentencing analysis that does not comport with this framework is unreasonable. *Id*.; *accord Mendoza-Mendoza*, 597 F.3d at 217-18; *Lynn*, 592 F.3d at 584-85.

20

Here, the district court did not hide its disgust with the nature of the offense Mr. Graves committed, including the use of guns, the involvement of a juvenile in the crimes, the fear of those in the stores during the robberies, and the planning of the crimes. [JA 107-10] In the district court's words, the conduct was "a serious offense." [JA 109] But just as a district court need not "incant the specific language used in the guidelines," *United States v. Rusher*, 966 F.2d 868, 882 (4th Cir. 1992), or engage in "a ritualistic exercise in which it mechanically discusses" each nuance of its sentencing calculus, *United States v. Lambert*, 984 F.2d 658, 663 (5th Cir. 1993) (en banc), a rote recitation of section 3553 factors cannot mask the substantive unreasonableness resulting from the district court's revulsion, however seemingly justified, with the offense conduct. More extensive justification was needed than the district court provided. *Hampton*, 441 F.3d at 288.

In addition to the guidelines, the district court was required to consider the history and characteristics of Mr. Graves. *Perez-Pena*, 453 F.3d at 241. The sentence must "fulfill the congressionally established objectives for sentencing: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; [and] providing restitution to victims." *United States v. Green*, 436 F.3d

21

449, 455 (4th Cir.), *cert. denied*, 126 S. Ct. 2309 (2006). Axiomatically, the district cannot impose a severe sentence merely because it finds the offense conduct abhorrent, especially when the co-defendants are treated differently and given greatly disparate sentences. To be sure, the district court did not wholly fail to articulate reasons under section 3553. Indeed, it noted many factors favorable to the government as well as matters favorable to Mr. Graves' and his individual circumstances. [JA 107-10] *See Amezcua-Vasquez*, 567 F.3d at 1057 (sentence substantively unreasonable where district court failed to consider "defendant-specific facts"). Here, as in *Lynn*, because the record does not indicate "that the district court considered the defendant's non-frivolous arguments prior to sentencing him," error occurred. *Lynn*, 592 F.3d at 585; *accord Carter*, 564 F.3d at 330 (because record "does not demonstrate that the district court conducted such an assessment and so does not reveal why the district court deemed the sentence it imposed appropriate, [this Court] cannot hold the sentence procedurally reasonable"). As in *Lynn* and *Carter*, this error is not harmless. Thus, the sentence imposed was substantively unreasonable and must be reversed.

## CONCLUSION

For the reasons stated herein, Zachary Graves respectfully requests that the judgment be reversed and the matter remanded for resentencing.

This the 2nd day of April, 2014.

/s/ M. Gordon Widenhouse, Jr.
M. Gordon Widenhouse, Jr.
RUDOLF WIDENHOUSE & FIALKO
312 West Franklin Street
Chapel Hill, North Carolina  27516
(919) 967-4900
mgwidenhouse@RWF-law.com

/s/ Keith A. Williams
Keith A. Williams
LAW OFFICES OF KEITH A. WILLIAMS, P.A.
Post Office Box 1965
Greenville, North Carolina  27835
(252) 931-9362
keith@williamslawonline.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*4,527*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Corel Word Perfect*] in [*14pt Times New Roman*]; *or*

   [     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: April 2, 2015                         /s/ M. Gordon Widenhouse
                                             *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of April, 2015, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Amy E. Ray
> OFFICE OF THE U.S. ATTORNEY
> 100 Otis Street, Room 233
> Asheville, North Carolina  28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that on this 2nd day of April, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above address.

/s/ M. Gordon Widenhouse
*Counsel for Appellant*